May it please the court, my name is Arian Sotherell on behalf of Hansel Law and it is my privilege to represent Ms. Rangarajan here today. The trial court erred in dismissing these claims as a discovery sanction for two primary reasons. First, the actions of the appellant simply did not give rise to the most severe of sanctions, dismissal. Second, there was no warning whatsoever to Ms. Rangarajan prior to the court's dismissal, a requirement addressed by this court numerous times. And this requirement addresses and protects this court's strong policy of deciding cases on their merits and not imposing the harshest of sanctions being dismissal. The appellant's actions, if sanctionable at all, were not so severe as to bypass the various other less drastic sanctions available to the court. Let me ask, I read most of what was going on in this case and this is not a case just at failure to produce a 37 motion for sanctions for discovery. This is a course of conduct in which the court pointed out a failure to follow the rules. And it starts out with the notion that it's a key tam action and then it's, that's dismissed and the proceedings go on. And instead of following the motion and accepting it or appealing it, she files another action. And then she keeps it secret. And the same thing happened on the last action that was filed. The court dismissed and didn't allow an amendment. She disregarded that and filed a fourth action. And then the court concluded that all the discoveries and motions would have to be redone in this case. She never signed her deposition in the form but then imposed an inconsistent declaration of 50-some pages, which makes the deposition essentially useless for considering any motions for summary judgment. And then she constantly talked about making judgments about what was needed by the other side in discovery. And there's some suggestion that it could be thousands of documents that she has not produced. And documents appear later that were requested earlier. This is not a discrete case where somebody says I refuse to produce or I don't show up or I won't answer the interrogatories and you have a motion to compel. This is a, goes to the heart of the whole process. And on top of it, the court said, without all these foibles, she doesn't have a case. She was basically fired for not performing as a nurse and putting in harm's way some patients. And she said, oh, the doctor said I was doing fine. Well, every single doctor that she alluded to said just the opposite. So the court's basically seeing this case as a punitive action or actions, four of them, in which the rules are abused, where the court concluded that all the discovery and the motions would have to be redone. We're talking about I don't know how many hours of attorney's time. But I must say I have, I've been in litigation for a long time, and I've never seen an abuse of authority. I've never seen an abuse of the process and the rules like this one. And then, of course, the court was terribly distressed by the fact that she was unwilling to accept the court reporter and said the court reporter was substituting other people's words. I don't speak that way. I didn't say this. And, of course, there's a tape, and she says it's been doctored. And how do you handle this as a judge? Certainly, and I'm going to address every single one of those points. Well, there's more. I'm just giving you the highlights. I'm sure. The record is replete with very interesting accounts of what occurred at the trial court level. But first and foremost, going to your point with regards to the dismissed actions, and not just the primary action that's before your honors this morning, but there was the dismissed action for lack of prosecution. There were four lawsuits. She was fired, and we end up having four lawsuits, and at least two of them are in explicit disregard for the court's orders. Well, first, if I may address this case in particular, the one that is the primary focus of today's action. Which is that, the first case? Or which action are we talking about, the first one? Yes, Your Honor. And it's consolidated with one of the other matters. The second one. The second one. Right. The third action is the one that is dismissed for lack of prosecution. The fourth action is the one... Well, it was filed secretly, and it was filed contrary to the fact that the court had already ruled against her on that very same action. It duplicated it. So the dismissal in that action, Your Honor, is very distinct from what we're dealing with here, and that's why it's important that we get to the point... It's the abuse of filing another lawsuit, filing four lawsuits that invoke the process of the court... But unfortunately, what's not addressed properly by the court are the relevant procedural steps that need to be taken prior to dismissal. And the first and foremost example of that... What should be salvaged? I mean, what do we do? We say to her, okay, we're going to start discovery over. We're throwing it all out. I'm directing her to answer the questions and sign the deposition, and she pays for it all. And that actually did happen in the case in this circuit before, Your Honor. I understand, but that doesn't address the problem. But it would. The court found that that was all useless. We have to redo the motions process. You have how many years of court time? Yes, but that is the exact scenario that's presented in so many cases before this same circuit time and time again. And yet, this court has continued to hold that still without giving that prior warning, without giving that opportunity to rectify the wrongs, that the ultimate sanction of dismissal is an abuse of discretion. And we find that... Can I ask you to talk about these warning cases? Yes. Because I have a theory, and tell me if I'm right about this. Sure. I feel like there's a set of cases... The clear rule is that you can't use this ultimate sanction without bad faith. And there's a set of cases where some misconduct happens, and it's not really clear that it's bad faith, rather than inadvertence or inability, like someone doesn't show up for a deposition, or there's been a problem in discovery. And in those cases, the warning is necessary, because until there's been a warning and a chance to get your act together, you can't be sure this is bad faith. But in this case, I'm not really seeing the need to confirm that there's bad faith going on here. And once you have the bad faith, you still need notice and an opportunity to be heard, for sure. But that's different from this whole kind of warning, second chance business, which I read as being very tethered to this idea that sometimes you need that process to establish the bad faith. Is that right? Well, Your Honor, I would disagree. Just because in those cases where the warning isn't perhaps as clear as we would like it to be, the explicit finding of bad faith in this case does not exist. Perhaps you will disagree with me on that point, but the court's ruling below... I can't figure out what bad faith is in procedure then, because... The court's ruling below, Your Honor... To sit there and say, I didn't say that, and the video says it, and the audio says it, and it says, I don't speak that way, that's somebody else, they doctored the document, and going through, and then... Three documents, she produced everything, and then come back later, and three documents that are key in the case, and she referred to, were not produced, and they show up. These things are not... They're manipulation, they're bad faith. How come four lawsuits? Why bypassing the court? Why disagreeing with the court? Why not following the rules of procedure? Filing a 54-page declaration, contrary to her depositions. So what's important is that we get to the factors, because I can address every single one of those. I know. I promise you, so I will. You had the opportunity in the district court, and the court did a thorough opinion... That she is, quote, not blameless. But the court never makes an explicit finding. You will find it nowhere. I know what you're saying, but I do wonder why it's not sufficient that the court finds, I have no reason to believe that if I continue this case, this woman will be in compliance. Well, I can assure you that... I mean, that's sort of another way of saying, she's doing it on purpose, and I can't make it stop. We were not counsel at the trial court level, but I have not experienced that same type of behavior with my client thus far during representation. I believe that perhaps there were some misguided... And that seems pretty close to a finding of bad faith to me. But if we address each of the things that are at issue below, these misguided irregularities, as I would like to characterize them, the errata sheet that was submitted to the court, the court makes numerous times findings that these are really just embellishments, that they really didn't have much bearing on the case whatsoever. So then, if that is, in fact, the issue before the court, this excessive errata sheet, what is the harm in excluding it? What is the harm in a less severe sanction? The harm in excluding it is that her... And the court pointed this out. I mean, you're taking the wrong side of the factual finding. The court points it out, but only... The harm that the court found was that she testified in deposition, and then in her errata sheet, she changed the substantive testimony and came up with a different answer, and then is relying on that to oppose the summary judgment motion. And the court gave several examples of that. It seems to me, and then to basically say, what I said there, I didn't say. It's been doctored by the court reporter. But that isn't what the court finds. Specifically, at the joint appendix, page 48, the court states, and I quote, while the plaintiff's proposed changes would not fundamentally change the substance of that testimony, referring to her deposition testimony, the actual substance of her proposed changes does not seriously trouble the court. So that was what the court found with regards to the errata sheet. So again, no substantive changes. That is not what's at issue. She was fully within her purview of a Rule 30 errata sheet, finding that there were errors. Why wasn't the lawyer sanctioned? I found it very That's a great question. Well, she obviously controlled all this, and the lawyer deferred to her, and he said he was. Well, I think that there are some discrepancies. You're going to have to let me finish my statements. The lawyer should have, he was an officer of the court, and he could have made all this work well. I guess you weren't the lawyer below, but your client still bears that responsibility. I don't think it goes well to take individual examples and say there's an answer to each one, or none of the example doesn't justify throwing the case out. What you have is a total dysfunctional case, where the rules of procedure are put in place to create an orderly litigation, and they were not followed, almost in no case. And the fact is that you had redos, everything's gone, you only have the same case. How many more cases will she file? In other words, the court throws something out or makes a ruling, and she goes right around it. Your Honor, the dismissal of the prior cases and then the refiling, the prior cases were dismissed without prejudice. It was apparently, and I can't speak, I have to defer to the record, because I, again, was not trial counsel, but it seemed a tactical maneuver, and not one that would be taken by my client personally, but one that would be addressed and guided by the attorney. So there was some misguidance, again, by prior counsel, and I believe that a lot of what we're dealing with here goes to one of the first of the two Schaefer factors, and that is the blameworthiness of the individual client herself, who was represented this entire time, and yet we're finding these very procedural irregularities occurring. Back to Judge Harris. That also ameliorates it unfairly. I mean, she wrote direct letters to the judge, and the lawyer made representations about what he had to include on her instruction, and he was going to follow that, and he was actually somewhat apologetic. She was orchestrating this, and of course her declarations and the various expressions from her own point of view. And that was at the 11th hour, and that was all prior to any motion to strike or the motion for sanctions. There, again, there wasn't this warning. So addressing Judge Harris' point of the warning and the cases in which we address there being a warning. The Hathcock case, from this court... A warning about what? A warning about... You take a case where somebody is going to impose a sanction under Rule 37 or whatever, a warning usually secures things, show cause orders, a motion to compel, court orders compelling. These types of things are the ordinary sanction process. But even that process could not function in this case. There's no proof of that, Your Honor, because none of those steps were actually taken. There wasn't a motion to compel. There wasn't an order to compel. There wasn't a prior sanction. The court says failure to follow the rules of procedure. A failure to follow the rules or procedural rules, and that's addressed in the other cases as well. Hathcock, this court, specifically stated, quote, this court has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction. A party is entitled to be made aware of the drastic consequences of failing to meet the court's conditions at the time the conditions are imposed. This is imperative. When he still has the opportunity to satisfy the conditions and avoid the sanctions. But what is the judge supposed to do here? At the time of the deposition, say, by the way, if you come to me with a made-up, obviously false accusation that the person videotaping your deposition has altered it to make you talk in a way you don't talk, I will sanction you? I just don't understand at what point the warning should have been issued here, on your theory. On my theory, it would be based upon the motion to strike. At that point in time, that's when all of this is really becoming an issue. She has submitted the errata sheet. She's submitted the declaration. The declaration is also addressed by the court, used in terms of... So we strike the motion of deposition? Is that what you ask? No, Your Honor, not at all. Well, how do you address Judge Harris's hypothetical, not hypothetical question? So, in addressing her question, when would be the appropriate time to give the warning? If the warning is given then, it gives her an opportunity to perhaps withdraw the errata sheet, withdraw her declaration, give another opportunity to perhaps depose. So we have two things under oath. We have a deposition under oath and we have an errata sheet under oath. That is correct, Your Honor. And she refused to sign the deposition. So now what are we going to do? What's the other counsel going to do? How are they going to cross-examine? How are they going to rely on anything when there are inconsistencies? Well, Your Honor, I think that if we look at the procedures taken in the project management case, we're presented with a very parallel... Stick with this case. Stick with this case. Of course. This case has got a unique set of facts and we have a summary judgment motion where the parties used the discovery or purported to use the discovery that was... Was it closed? Discovery was closed, wasn't it? Discovery was closed, Your Honor, yes. And all of a sudden we start seeing new deposition to rely on. She says, oh, I didn't say that. That's my wrong voice. And all of a sudden you throw it up and you say, okay, what do I do with the motion for summary judgment? So we give a warning. If a warning is applied, a warning is given, then it gives her the opportunity to... What is the language of the warning? The warning states that you are to comply with the procedures of discovery. You are to comply with the rules governing submission of an errata sheet, with the rules governing the submission of a declaration or affidavit pursuant to Rule 56. And you're to comply with Rule 26 to supplement discovery. But time and time again... Even after the district court says... After the motion for sanction has been filed and the district court says this raises serious issues, I'm going to suspend everything until we can address this, I mean, that's a warning. And after that, she's still coming back saying, I want to be really clear. The court service is lying and they put words into my mouth that I didn't say. So I don't characterize that issue or the letter from Chambers to the council as being a warning. And that's found at the Joint Appendix, page 381. Do you think that would have cured something in this case? If there had been a warning, I do think it would have cured something in this case. I absolutely do. But there wasn't a warning. That was merely an acknowledgement that this motion to strike had been received and it was raising an eyebrow of the judge. But it doesn't actually address a full explicit warning like is required in all of this circuit's prior cases. And is addressed even in the case of Young Again, which is cited by the defense. Young Again... And I see that my time is up, if I may briefly conclude. You may. But in the case of Young Again, and that's found at 459 Federal Reports 294. In the case of Young Again, there had been numerous sanctions by the court prior to the ultimate sanction of default judgment. So it's cited as though that case gives no warning, but in fact there had been warnings because there was a prior sanction of attorney's fees and costs imposed upon the wrongdoing, the malfeasance in that case. And then the wrongdoer still continued not to rectify their wrongs and continued to act against the orders of the court. And it was only then that the court issued a dismissal and granted the default judgment. In every single one of these cases, we see where there is that explicit warning, but there wasn't one here. So there was no opportunity for these actions, these irregularities, to be aggravated. So she comes back and answers interrogatory, certifies documents, I'm giving you these and that, discovery is closed, I've given you everything, the deposition has been taken, then we go into summary judgment, and 19 documents are attached that were never produced. I mean, does she need a warning? But her deposition, she's clear that she believes she's turned everything over to her attorney. Where did the 19 documents come from? She believed that her attorney had everything. So again, we're going back to the Schaeffer factors and the blameworthiness of the client as contradicted by the actions of the attorney need to be taken into consideration. There's nothing within the record that really gives us any evidence that she personally was withholding these documents. She believes that she gave everything to her attorney. And when we address these 19 documents, why can't she say, I did give them to my attorney? She discovered them on her computer. And she says in her deposition, I gave everything to my attorney. She states clearly, I gave everything to my attorney. And then even in the opposition to the motion to strike, trial counsel says she believes that she gave everything to me. And the court took her to task on that too. She says, I believe I did. She believes that she did? If there aren't any further questions, I'll just conclude by asking that this court reverse the dismissal of the trial court. We didn't really have an opportunity to go through each of the factors. But again, the warning in and of itself being lacking, I believe gives reason for a reversal. Thank you. Thank you. And you're reserved time for rebuttal. Mrs. Smith? Thank you, Your Honor. May it please the court. The district court found that Ms. Rangarajan had quote, flagrantly and unremittingly violated the rules governing discovery and summary judgment, and that her misconduct quote, seriously undermined the truth-seeking function of the court. It carefully considered the six factors that this court has laid out for weighing a sanction of dismissal, including the availability of lesser sanctions. But it expressly found that short of dismissal, there's not another remedy that would effectively address Ms. Rangarajan's serial misconduct. The district court's underlying factual findings are not clearly erroneous, and its sanction of dismissal was not an abuse of discretion. Now sitting here at counsel table, I heard two arguments for why the district court's decision was in error. And the first was that Ms. Rangarajan argues that she received no warning. And the second argument is that she should have been afforded what amounts to a second chance, either by way of a warning or escalating sanctions. Let's start with the first. As Judge Harris pointed out, she was actually warned in this case. The district court issued an order staying further proceedings until the defendant's motion for sanctions was fully briefed and resolved. Ms. Rangarajan then expressly argued in opposition to that notice that a sanction of dismissal was not appropriate. So this is not a situation where due process rights were violated. And as this court found in Choice Hotels, which is actually not a sanctioned case, a very good indicator of whether the order was clear is whether it was clear to those who were supposed to understand it, the parties. Here, Ms. Rangarajan and her counsel knew that dismissal was a possibility. Beyond that, the district court tipped its hands, saying that it had serious concerns about her misconduct. And after warning her, she continued to engage in conduct that was arguably objectionable to the district court. So what we're left with is Ms. Rangarajan. And what was the conduct after the motion for sanctions was with the court? So that after we filed our motion, Ms. Rangarajan filed two separate analyses with the district court, where she made incredible claims that the videotape of her deposition was somehow seamlessly altered to make it appear that she was saying things that she didn't say. And she also filed her fourth lawsuit, even after her third one had been dismissed. So she's continuing to engage in misconduct and prolonging the... That's a different case, right? It's not a different case, Your Honor. It is a different case. You said she filed a separate lawsuit. It's identical. Sure. But it's still a separate case, correct? I would disagree, Your Honor. You can't disagree with the fact that it's a separate case, can you? Well, I agree that it has... We can agree that it's very similar, almost the same, but it is a separate case, correct? I agree that it has a separate docket number. The claims within the case are identical to claims that she twice lost on. Absolutely. But it is a separate case, and that was not before the court in terms of the motion for sanctions. It was not, Your Honor. We made the court aware, through a letter, of the filing of the fourth case. But we're talking about warnings now, in terms of in this case where the sanctions were, right? Sure. Well, let's get to that. Let's get to the law on warnings as it existed, because I'm sure that's something that concerns this Court. But here's the... Before you get to that, you know, it's... Like Nehemiah, I've been litigating for a long time, too, that it seems like the best way to get to clients is... When I practice law, I try to avoid the court saying anything to my client that required a response, unless they were on the witness stand. The way to get to manage a court, to me, is through lawyers. And you say, the warning is to the lawyers. Listen, your case is going to be dismissed if you don't control your client. When you, in Room 26, materials are there, you indicate that. It's speaking to... In this case, when was the lawyer ever spoken to? And it is... You know, clients do all kinds of things. Anybody who's had clients know it varies from A to Z. But it's the lawyer that is the gatekeeper and who's responsible as an officer of the court to say, I don't care what excuse you make for your client. You represent this court as an officer, and I'm going to make sure when I say you're supposed to file documents, you file them. If you do this again, your case is going to be dismissed. I don't care what your client is telling you. Where in this case were there warnings in terms of addressing counsel in this case? The warnings to counsel about the conduct, the way this case was being prosecuted. There was no warning to counsel in this case, although counsel didn't need a warning. Or didn't? I don't believe so, Your Honor. Oh. I don't think you need a warning to know that it's frivolous to file the identical claim not once, but twice after it's been dismissed. There's a reason why there are appeals from adverse decisions as opposed to just refiling the same claims over and over. It was dismissed with presence. The... I'm sorry. The case was dismissed with presence. Which case? You said keep filing your cases over and over and over. They weren't... the case was still going on, right? That's correct, Your Honor. But under the rule against claim splitting, what happens is that if you were denied leave to amend in a case, under the rule against claim splitting, you're not allowed to then file subsequent action. Your remedy is to appeal after a final judgment is entered. Counsel didn't do that here. And there's a reason any counsel, even if they're not familiar with the term claim splitting, knows that you just don't keep filing the same claims over again if you're dissatisfied with the district court's decision denying you leave to amend. Did the district court tell counsel that you shouldn't do that and that you're subject to sanctions for filing? No. We notified them. No, the court. I'm talking about the court. It's not your job. You're not the police or the court. You're just advocating for your client. That's all you do. Sure. And let me get to that point. And it's important with respect to Ms. Rangarajan's misconduct. What the district court said here was, I had no opportunity to give a prior warning because Ms. Rangarajan's misconduct was revealed all at once. And that's said at JA 69 through 70. And when the district court was confronted with that misconduct, it couldn't ignore the scope and severity of it, which was extreme. And the district court also couldn't ignore the prejudice that a lesser sanction would cause to the defendants. Then you consider the fact that the district court made detailed findings that supported his conclusion that Ms. Rangarajan's repeated misconduct, as Judge Niemeyer pointed out, seriously undermined the truth-seeking function of the court. You have findings that she intentionally withheld thousands of responsive documents, that she made false certifications about compliance with discovery requests, that she repeatedly made baseless accusations about the court reporter, that she made misleading statements regarding her retention of work email, suggesting she had only retained a few when she had retained thousands, and that she was responsible, however, for her failure to produce a letter and an application that were theoretically helpful to her case. She didn't argue below address that failure at all. And so for all of those reasons, the district court was well within its right to find that she had engaged flagrantly and unremittingly in violating the condom. Opposing counsel is correct. The district court did not enchant the magic word, bad faith. But appellate courts don't require district courts to make magic incantations. It's obvious from this record that the district court found bad faith here. Beyond that, the district court expressly found that it had little trust or little confidence that Ms. Rangarajan and her counsel could be trusted to litigate fairly going forward. So what do you do? The three main tools of discovery in this case, interrogatories, deposition, document requests, they're all dishonored. So you're going to have her go back and start this proceeding over again? What confidence do you have that you're getting the information that you need? Every aspect of this case violated the trust that needs to go on in civil discovery. And what I would say here is that there is a strong need in civil discovery for a powerful deterrent effect. Because it is difficult to detect when violations occur. And what you want is you want a party looking at a document that is potentially fatal to their case and say that the repercussions of me not voluntarily turning this over to the other side are so severe that I am going to surrender it voluntarily rather than risk having my case dismissed as a sanction. And so for all those reasons, the district court's finding was amply supported by the record. I would like to briefly address the law on warning because it's been cited by the other side. No court of which I am aware has imposed a requirement of a warning in every case. The Supreme Court has held it was in the context of a failure to prosecute that the dismissal is not void simply because of a lack of a warning. And it said that the most severe in the spectrum of sanctions must be available to district courts. Beyond that, this court actually affirmed what it deemed in essence a sanction of dismissal in a case where there was no warning whatsoever. And that's this court's decision in RAB. In that case, the plaintiff there was found to have engaged in bad faith in violating an order of the court. And what the district court did in that case was it essentially deemed all that evidence stricken and it granted summary judgment for the other side. And here's what's interesting. On appeal, this court said that was in essence a sanction of dismissal. But beyond that, this court affirmed because there was a finding of bad faith. And what else is interesting about RAB as it plays out in this case is it shows that the district court might have been reluctant to go through the steps of striking her evidence and just making a decision of this court that is telling him that that is the same thing as granting a sanction of dismissal. Beyond that, the opposing counsel has highlighted statements from this court where they've highlighted the significance is the words this court used about issuing a warning or encouraging trial courts to consider less than sanctions. That does not speak of language of a requirement. And we know that those cases would have been decided differently if it were a requirement. This court would have just said there was no warning issue here. That's a requirement. We're vacating and remanding. It didn't do that. And as Judge Harris pointed out, a lot of those cases are distinguishable on the facts. The Lachey and Hathcock both involved the violation by counsel of a scheduling order. And what the court said was we considered it a salient fact that the parties wouldn't know that that would necessarily result in a dismissal. Here you have repeated instance of what I would describe as inherently bad faith conduct, making misrepresentations to the court, deliberately withholding documents and the like that set this apart from those cases. Choice Hotels is not even a case that has anything to do with a sanction of dismissal. In that case, the parties entered into a settlement agreement. It scuttled and the district court essentially took it out on the other side for not violating the terms to refile the case. And what this court said there was if you're going to impose conditions before a party can refile, they need to be clear at the time they're imposed. That makes sense. That's different from the facts of this case. Can I ask you a question? I feel like on the one hand, there are two different concepts in the air here. One is this idea of a warning and a second chance to comply. And then whatever we think about that, there is this bare minimum due process requirement that before sanctions are imposed, there's notice and an opportunity to be heard. So is it your position that the plaintiff in this case was on effective notice that the fourth action might have been dismissed even though nobody had asked for that? Or is it more that it doesn't really matter if you know precisely the nature of the sanction that's being considered? I think the plaintiff did have notice in this context. We notified the court of the relation between the two cases and we noted when it was filed. And then the district court stated our obligation to respond to that case, stating, and I don't have the precise words, that until it adjudicated the motion for sanctions, it was going to stay our obligation to respond. She may not have known that it was linking it up. If this court has any reservations about that case, though, there are two alternative bases for affirming the dismissal of that. The first is the rule against claim splitting, which I've already covered. Because you have identical claims, denial of leave to amend, and then you're trying to reassert them in a new action. That's automatic. Beyond that, you actually have res judicata now. Because the opposing counsel never challenged the underlying order in her first case denying her leave to amend. So that portion of the judgment in the first case is now final. And so that would preclude her from bringing the same claims over again in her fourth case. And I'll briefly say two other points about warning as a policy. There's a reason why it hasn't been opposed. The first off is that there are certain kinds of misconduct that are not deserving of a second chance. So, for example, take the hypothetical of intentionally concealing a document with the intent to impair its use in an official proceeding. That's a crime under 18 U.S.C. 1512c. Under Ms. Rangarajan's argument, that same conduct would not lead to a dismissal of an underlying civil case in which she was proceeding. But beyond that, sending in a signal that a sanction is required in every case would effectively let parties know that they have one get-out-of-jail-free card. And so for that reason, it might actually embolden certain parties to engage in one-time instances of misconduct because they know it can't lead to the ultimate sanction. I would simply conclude unless there are any further questions from the Court, by saying that I'm mindful of this Court's need to set appropriate standards. What I would say is that even though a sanction of dismissal is a severe sanction, the conduct at issue here was equally severe. And I think district courts reading this decision, if it's an affirmance, there's little risk that they will then take a one-time violation, let's say missing a scheduling order, violating a discovery deadline, filing perhaps too long of a Rule 56c.4 declaration as license to dismiss all those cases. What I do worry about is what vacater would send to this Court. You have pervasive misconduct in this case that's repeating throughout time. It's identified all at once. And if you were to vacate here, I think district courts would rightly feel it's dismissal appropriate if it's not appropriate on the facts of this case. And for those reasons, if there are not any further questions, we're prepared to submit on the briefs and we ask that you affirm the judgments. It seemed like there was a lot of concern about the errata sheet. I mean, and that's, what's the big deal about that? I mean, court reporter, don't you have, doesn't she have the right to do that? I mean, it's persnickety, but, and maybe, you know, most people don't do that, but it's one thing in terms of, you know, punishing somebody because they did something in bad faith as opposed to doing something that's making you spend more time and they're worrisome. Some people like that in terms of plaintiff. Don't you have a right to look at the court reporter's transcript and say, the ones you disagree with, don't you have, isn't that the purpose of it? It is the purpose for minor variations. No, it's for any variation you want to put in there. What case do you have that I have to decide which ones are minor? You can, for example, you have the right, if you want, most people don't, to look at every sentence and say, no, I did not say that. I said this and I said that. Those are things that, and most people don't, because that's, but that's where judicial temperament and all those things come into play, because it deals with people who don't do what people normally do. That's the whole point. But the point is, do you have a right? It's like someone who comes into the bank and they come in there with some pennies and they tell us a word about it, but they have a right. Of course, it's not legal tender for some things. Banks can reject too many coins, but they come in, it's not on some, most people don't. But what says she couldn't do that? I think when an errata turns into an effort, as the district court found, to rewrite and replace her deposition testimony, then it's gone too far, for sure. Why gone too far? Because errata sheet doesn't mean automatically it's going to change the transcript. It gives you a right to put in the record that it's wrong. But then all of a sudden, okay, your errata sheet now becomes the record. No, it doesn't. It becomes insensitive, because what you have is a document that's parallel that says, the court's not going to have to say, well, yeah, I find that you're correct, because they did, so you're wrong. But you still have a right. In other words, in a sense that you almost have a right to be wrong. It's not against the rules because you're wrong about something. It just has to be wrong. And I thought in the record that that was a big thing. Because I know court reporters are connected to the statement, unlike the states. But anyway, I won't get into that. Sure. Well, if I can briefly say, Your Honor, that depositions serve an important function in the process, and that is to weed out sham cases. And I would have a serious concern if a plaintiff, that something supposedly happened to them, can't speak to what happened during a live deposition, but then suddenly behind the scenes, after seeing a motion for summary judgment and laying out the numerous deficiencies in her case, uses an errata to what I think she did, was sow doubt in the legitimacy of her deposition, and thus allowed her to submit the declaration that she submitted. And the District Court's findings on the errata, it still found that there were almost 500 corrections, comments, and proposed additions. And what the other counsel highlights was that the District Court said that many of the proposed changes lack substance. I agree. Many of the additions that she submitted were not significant in and of themselves. Right. The fact that you said put back in what you take out is not significant. What is significant is that for 100 lines of testimony, discussing key aspects of her case, she's saying the court reporter got this wrong. And then she is filing a declaration that's meant to undercut every negative performance evaluation that she received. And that's what makes the errata so fundamentally wrong in this case. And it is just one in a totality of evidence that was in front of the District Court. This Court's review on clear error has to look at the entirety of the record and decide whether or not the District Court was clearly erroneous based on that. And for that reason, under the standards of review, I don't think that this judgment can be reversed. And unless there are any further questions, we're prepared to submit on the papers. All right. Thank you, counsel. Thank you, Your Honor. Hello again. And I will try to be brief. But I would like to address the RAB case. So the RAB case was an asbestos case. And the court set forth a very detailed pretrial order. And in that pretrial order, not only were specific dates identified, but there was a specific warning within the order itself telling the plaintiffs that if they failed to adhere and comply with the specifications within that order, that they could face the sanction of dismissal. And it was actually even more specific than that. The court tells them that specific claims will be dismissed against specific defendants. So then not just on one occasion and not just on two occasions, but on three occasions, the plaintiffs in that case failed to abide by the order and failed to meet those specific deadlines and dates. Based upon those actions, the court did hold that dismissal was appropriate. But there was a warning. And again, this case is actually before Schaefer. So this is before. It's from 1985. It's before we get to Schaefer. And it's before we get to the six factors that are laid out for the courts to analyze and evaluate when they're determining whether or not to impose that most severe sanction of dismissal. Schaefer presented egregious facts. We had an assistant United States attorney who was found to have really committed professional misconduct because he wasn't forthright with the court. He didn't notify the court of an investigation that was pending into the credentials of one of his witnesses. And the court found that he had repeatedly and deliberately and in bad faith failed to make these disclosures. And yet the sanction of dismissal wasn't appropriate. The concern I have is that I'm sort of an appellate judge looking at this record cold and it's easy enough for me to say it doesn't seem like it was the end of the world or anything what happened here. But I think we've been cautioned by the Supreme Court not to do that as appellate judges. It's no fair. Of course we can afford to be patient. I've only spent a couple of hours with this case. Not a whole lifetime tied up while this person just kind of flagrantly abuses the discovery process in front of me. And so this what made me think of this is that you said that the Rob case was pre-Schaefer but now we've got Schaefer and now we have a district court who really went very carefully through those Schaefer factors and said this is how I understand the case that was litigated in front of me. And it's very hard for me to see how I as an appellate judge could say you abused your discretion. I know better what happened in front of you. Can you address that concern at all? I am very troubled by sort of the standard of review being abuse of discretion on the Schaefer factors and just my institutional capacity to second guess the district court judge here. Sure. So I understand the warnings from the Supreme Court and I know that they're saying that well hindsight's 20-20 so when you get to the appellate level it's easy to look back and say oh well wait a second they should have done this. Sure. But the trial court in this case looks at the Schaefer factors and actually finds that much of what's addressed here, the errata sheet for one, the I know what you're, but I feel like that goes the other way. This is a district court who was really careful and balanced in making these, not a district court who in a fit of rage said this person has done everything wrong. Very carefully and in a very nuanced way said this part here wasn't that prejudicial but this part over here was deeply prejudicial and so I kind of feel that the times at which the district court said these particular abuses of the process weren't deeply prejudicial or they weren't abuses because the changes weren't substantive, that to me cuts the other way. I look at that and it gives me a lot of confidence that this district court judge was being really fair. But I disagree, Your Honor, very respectfully because the court outright states that a warning number one isn't necessary in this case. So they jump over everything else that's said in Schaefer, everything that's said in the project management case, everything that's said in Halfcock, everything that's addressed in Young, in Rabb, all of those cases. So they jump right over that and they bypass it. Then when they're evaluating the factors, one of the factors that I find very intriguing is the public interest and the court doesn't at all address the public interest in cases of discrimination, retaliation in this case especially for minorities. There is a great public interest in those cases being decided on the merits. And a litigant who yes, perhaps was challenging to the trial court presented those misguided irregularities. That individual The case was, it might be significant that the case was at the end of all the process. In other words, So was Schaefer. So was project management. Discovery was closed. The motions for summary judgment were there. And there was a risk of granting or denying the motion for summary judgment going to trial. At that point, you expect to have the orderly process. And when the court uncovers the fact that there is basically nothing it can use because of the conduct of the defendant, I suppose it could have made the judgment I'm going to strip all that evidence and grant the summary judgment a dismissal. It could have. But I think it concluded that the case was so infected with problems, deliberate conduct on the part of the plaintiff that there was no hope of doing it over again or starting again. It's just been an abusive process. And you can't get the benefit of an abusive process. And if we were to send it back, this woman would get enormous benefit of everything she's done. And I personally think the record shows that she was actually angry at Johns Hopkins and she had all these doctors named. They brought in every one of these doctors from their busy practices to testify to oppose them. She was contradicted 180 degrees in every one of those cases. And everything she alleged about their supporting her, they did not. And they supported the fact that she was properly disciplined. And so now she's fired. And she brings key tam action, discrimination actions. Defamation. Defamation, all kinds of things targeting them. And then she files one suit and they throw out the key tam part. It's not even appropriate. And then she goes and files another key tam action. The same thing. And there's something overarching about this case that the district court viewed and saw. And it's not an ongoing process where a little part was defective and the court then could correct it. The court's here at the end of the whole process. All the discovery is completed. The summary judgment's before the court. The court has to decide the case. And all of a sudden the court concludes everything is rotten in this case. So we can't use anything. Well, the court doesn't make that explicit finding that everything is rotten. So I do disagree with that. You can't rely on the interrogatories. You couldn't rely on the document production. You couldn't rely on the depositions. But that isn't entirely what the court finds. And the court was not in the position to make findings of fact. Those were issues. I said we would have to redo all the discovery and the motions practice. That's what the court said. And I believe, Your Honor, if we look at the prior cases we've gotten to that posture before. We've gotten to the close of discovery, the case. We were actually in trial posture in projects management. Project management was two days away from trial. And the court found that there were again, reasons to give leniency and allow for another deposition to be taken. So I don't believe that what the court ruled and I know that my time is up, but if I may briefly conclude. Yeah, you may. I don't believe that what the court ruled was that this case was impossible to make going forward if other action had been taken. Because he didn't analyze that. The trial court didn't actually take that into consideration. The court did say there was nothing to it except, in other words, she was facing I interpret, I can't remember the exact word, she was facing basically a dismissal of her claim as made and she was trying to resurrect it with false accusations and declarations about her deposition. But that in and of itself. And trying to fill the gaps that otherwise could not have been filled. But that contradicts the court's own characterization of the errata sheet and of the analysis not the analysis, but the declaration that was submitted. The declaration that was submitted I'm talking about what the court said in the opinion. In the opinion, the court says and I quote that the declaration was, quote, an embellished narrative. An embellished narrative doesn't do anything to completely circumvent the fact finding function of discovery. So it didn't prejudice the defendants. It actually gave them a little bit of insight. So perhaps instead of just having her deposition testimony, now they know exactly what she's going to be saying at trial. But, again, the case did not get decided on its facts. And the court was not in the position to decide the factual disputes. And the record is riddled with factual disputes. Summary judgment, that's when it can decide. Unless the factual disputes were manufactured by deliberate misconduct. But they were not. The trial court record actually shows throughout deposition testimony, Ms. Sharon Dudley Brown testifies about the existence of that fellowship application. So her testimony with regards to that, and I understand that it's not within the record before this court, but that just goes to show, again, there were issues that were not fully addressed by the trial court. So the trial court's posture if you interpret it as being that the case would have been dismissed just based upon the presentation. No, I'm suggesting the court hinted at that in its opinion. Saying this case basically is just putting words in its mouth. That basically it's worthless and she's trying to fill in the gaps with this misconduct. We can read that again and look at it. Thank you, Your Honor. And if there aren't any further questions, I'll submit. Thank you, Counsel. Thank you. We'll ask the clerk to adjourn the court. Senator Dyer, then we'll come down and get counsel. This honorable court stands adjourned sine die, God save the United States and this honorable court.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris